UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT LOUISVILLE

KENNETH E. CORDER, SR., on Behalf
of Himself and All Others Similarly Situated                              PLAINTIFFS

v.                                                          NO. 3:05-CV-00016-CRS-JDM

FORD MOTOR COMPANY                                                         DEFENDANT

## MEMORANDUM OPINION

This matter is before the court on the plaintiff's third motion for class certification. (DN 242). The matter is now ripe for adjudication. For the reasons set forth below, the plaintiff's third motion for class certification (DN 242) will be denied.

### I.

The relevant facts and procedural history set forth below are taken from the court's prior memorandum opinions addressing plaintiff Kenneth E. Corder's ("Corder") first and second motions for class certification.[1]

**A. Corder's Allegations and Ford's Responses**

Corder filed this action against defendant Ford Motor Company ("Ford") on behalf of himself and others in 2004. Corder alleges that the 6.0L Power Stroke diesel engines installed by Ford in model year 2003 F–Series Super Duty Trucks and Excursions were highly problematic. Corder claims that those engines, which he deems the "2003 engines," were "renowned for a host of serious problems," leading Ford to implement a customer service program for those vehicles and even to recall and buy back some vehicles installed with those engines. (Second Am. Compl., DN 215, ¶ 14). Corder alleges that many consumers waited until the 2004 model

---
[1] *See* DNs 210, 238.

year to purchase F–Series Super Duty Trucks or Excursions, believing that Ford would make improvements to the "2003 engines." (*Id.*). However, Corder claims, Ford continued to install "2003 engines" in model year 2004 Super Duty Trucks and Excursions that were assembled in July, August, and September of 2003. (*Id.* at ¶ 15). Then, in October 2003, Ford "orchestrated a coordinated change" with its engine manufacturer "to implement changes and improvements" in the 6.0L Power Stroke diesel engine for the remainder of the 2004 model year. (*Id.* at ¶ 16).

In May 2004, Corder purchased a model year 2004 Ford F–250 Super Duty Truck with a 6.0L Power Stroke diesel engine. (*Id.* at ¶ 19). Shortly thereafter, Corder claims, he found out that the engine in his truck was a "2003 engine" that did not have the improvements that were in the "2004 engine." (*Id.* at ¶ 20). According to Corder, Ford's non-disclosure that it had installed a "2003 engine" in his model year 2004 truck was an unfair, false, misleading, or deceptive act within the meaning of the Kentucky Consumer Protection Act, KRS § 367.110 *et seq.* ("KCPA"), and it caused him to suffer an ascertainable loss. (*Id.* at ¶¶ 21, 32).

Ford, for its part, takes issue with Corder's claim that its engines have model years. Ford claims, in effect, that it makes running changes to its engines throughout the year. (*See* DN 228, p. 5–10). Thus, Ford argues that the purchasers of 2004 model year trucks built prior to October 2003 received multiple different engines, and "all of those engines were improved over most engines installed on most 2003 vehicles." (*Id.* at 1–2, 6). Ford further claims that "in the months and days before and after October 1, 2003," it was making "constant quality improvements" to the engines. (*Id.* at 2, 5–7, 9–10). Ford takes the position that October 1, 2003 was simply a date on which it made additional changes to the engines that brought them up to 2004 emissions standards. (*Id.* at 2, 8).

### B. Procedural History

Following initial discovery, Ford moved for summary judgment. This court granted the motion, finding that Corder had not shown that Ford's actions were false, misleading, or deceptive within the meaning of the KCPA, nor had Corder shown that he suffered an "ascertainable loss," as is required to maintain a private action under the KCPA. The Sixth Circuit disagreed with this court's disposition, holding that a reasonable jury could find that Ford's actions were deceptive and that Corder suffered an ascertainable loss when he received an engine that was not the same as the one a reasonable consumer would have expected. *See Corder v. Ford Motor Co.*, 285 F. App'x. 226 (6th Cir. 2008).

Upon remand to this court, Corder filed a motion to certify a national class. (DN 194). However, this court denied Corder's motion, finding that a national class was not viable because the laws of each of the states in which the putative class members purchased their vehicles would have to be applied, which would lead to significant problems of individualized proof and manageability. (DN 210). This court identified state laws that required proof of reliance as posing particular problems, since the element of reliance would require an individualized inquiry into the state of mind of each consumer.

This court then granted Corder leave to file a second amended complaint, in which he sought to represent a class of only Kentucky residents. (DNs 214, 215). The second amended complaint stated that there were at least 586 members of the class, whose identities and addresses can be readily ascertained from Ford's records. (DN 215, ¶ 23).

Ford moved to dismiss Corder's second amended complaint. (DN 220). Ford contended that the KCPA required proof of reliance, but Corder did not plead in the second amended

complaint that he had relied on Ford's deceptive act. This court denied Ford's motion to dismiss, finding that the KCPA did not require proof of reliance. (DN 236).

Corder then filed a second motion for class certification in which he sought to certify a class pursuant to Federal Rule of Civil Procedure 23(b)(3). (DN 218). Corder's second proposed class included

> All Kentucky residents who were original purchasers of a 2004 model year Ford F–Series Super Duty Truck or Excursion, which Ford Motor Company manufactured and installed with 6.0L "Power Stroke" diesel engines before October 1, 2003. To be excluded from the Class are the judges to whom this case is assigned and their staff.

(*Id.* at 1). This court denied Corder's motion, finding that Corder failed to meet the requirements for class certification set forth in Rule 23(b)(3). (DN 238). In particular, we held that Corder could not demonstrate that common issues would predominate over the individual issues present in the case because

> [T]o establish liability under the KCPA, it also must be shown that the good at issue was purchased primarily for personal, family, or household purposes.
> In this case, the need to determine the primary purpose for each customer's purchase requires an individualized inquiry that threatens to overwhelm any trial on the matter. The trucks at issue—Ford F–Series Super Duty Trucks and Excursions that have been installed with 6.0L Power Stroke diesel engines—are not the type of product about which it may be inferred that all, or even the vast majority, were purchased primarily for a personal, family, or household purpose.
>
> . . . .
>
> Not only does it appear likely that many members of Corder's proposed class purchased their trucks primarily for commercial purposes, but the litigation of that issue will require individualized inquiries into numerous class members. Clearly, the question of why any particular customer purchased the pickup truck is not something that can be resolved on a class-wide basis. Thus, the question is whether such an individualized inquiry destroys the predominance of class-wide issues. In this instance, the court finds it does.

(*Id.* at 7, 9).

Corder then filed this third motion for class certification, in which he redefined the proposed class to include

> All Kentucky residents who were original purchasers of a 2004 model year Ford F–Series Super Duty Truck or Excursion, which Ford Motor Company manufactured and installed with 6.0L "Power Stroke" diesel engines before October 1, 2003, and who purchased their vehicles primarily for personal, family or household purposes.
>
> To be excluded from the Class are individuals whose 2004 model year Ford F–Series Super Duty Truck or Excursion vehicles were registered as commercial vehicles pursuant to KRS 186.050 (2004). Also to be excluded from the Class are the judges to whom this case is assigned and their staff.

(DN 242, p. 1).

## II.

The party seeking certification of a class action bears the burden of showing that a class action is appropriate. *In re Am. Med. Sys., Inc.*, 75 F.3d 1069, 1079 (6th Cir. 1996). A district court considering a motion for class certification must conduct a "rigorous analysis" into whether the requirements of Rule 23 of the Federal Rules of Civil Procedure are met. *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 161 (1982). In doing so, it may be necessary for the court to "probe behind the pleadings." *Wal–Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2551 (2011) (quoting *Gen. Tel. Co. of Sw.*, 457 U.S. at 160). A district court has "broad discretion in determining whether a particular case may proceed as a class action" so long as the court applies Rule 23's criteria correctly. *Cross v. Nat'l Trust Life Ins. Co.*, 553 F.2d 1026, 1029 (6th Cir. 1977).

In order for a class action to be certified, it must meet the prerequisites of Rule 23(a) of the Federal Rules of Civil Procedure: (1) the class must be so numerous that joinder of all members is impracticable; (2) there must be questions of law or fact that are common to the class; (3) the claims or defenses of the representative parties must be typical of the class; and (4) the representative parties must fairly and adequately protect the interests of the class. In addition

to meeting those prerequisites, a class action must fall within one of the categories set forth in Rule 23(b).

A class action may proceed pursuant to Rule 23(b)(3) if "the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). In order to meet the demand of Rule 23(b)(3) that common issues predominate, a plaintiff must show that "the issues in the class action that are subject to generalized proof, and thus applicable to the class as a whole, . . . predominate over those issues that are subject only to individualized proof." *Beattie v. CenturyTel, Inc.*, 511 F.3d 554, 564 (6th Cir. 2007) (quoting *In re Visa Check/MasterMoney Antitrust Litig.*, 280 F.3d 124, 136 (2d Cir. 2001)). The predominance requirement in Rule 23(b)(3) "guards against certifying class actions that could overwhelm or confuse a jury or compromise a party's defense . . . ." 59 Am. Jur. 2d, Parties § 74 (2013). "[C]ertification is not appropriate unless it is determinable from the outset that the individual issues can be considered in a manageable, time-efficient, and fair manner." *Id.* (footnote omitted). The predominance requirement "is one of the most stringent prerequisites to class certification." *Id.* (footnote omitted).

### III.

In this action, Corder seeks class certification pursuant to Rule 23(b)(3), which requires the court to find that the questions of law or fact that are common to the class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy. This court previously held that the questions of law and fact that were common to the class members

did not predominate over the issues that were subject to individualized proof. (DN 238). Corder then filed the present motion, in which he revised the class definition in the hopes of comporting with the provisions of Rule 23(b)(3). The court finds that Corder still has not met his burden of showing that the requirements of Rule 23(b)(3) are met. Thus, we need not address whether Corder's proposed class definition satisfies the requirements of Rule 23(a).[2]

Corder seeks relief on behalf of himself and the proposed class under the provisions of the KCPA. KRS § 367.220, which provides for the recovery of damages under the KCPA, states in pertinent part that

> Any person who purchases or leases goods or services primarily for personal, family or household purposes and thereby suffers any ascertainable loss of money or property, real or personal, as a result of the use or employment by another person of a method, act or practice declared unlawful by KRS 367.170, may bring an action . . . to recover actual damages.

Further, KRS § 367.170 declares "[u]nfair, false, misleading, or deceptive acts or practices in the conduct of any trade or commerce" to be unlawful. Thus, for Ford to be liable for damages to a person under the KCPA, it must be established that: (1) the person purchased or leased a Ford vehicle in question primarily for personal, family, or household purposes; (2) the person suffered an ascertainable loss; and (3) the loss was a result of an unfair, false, misleading, or deceptive act or practice.

In the memorandum opinion denying Corder's second motion for class certification, this court determined that before Ford could be deemed liable to any prospective class member under the KCPA, it must be established that the person's primary reason for purchasing the truck was for a personal, family, or household use. (DN 238, p. 14). We noted that this would require an individualized inquiry into each prospective class member's primary purpose for purchasing the

---

[2] Accordingly, the court need not address Ford's concerns regarding Corder's ability to satisfy the Rule 23(a) requirements, as set forth in Ford's Response Memorandum in Opposition to Plaintiff's Renewed Motion for Class Certification. (DN 246).

truck. Corder estimated that the class would contain approximately 600 persons, and this court found that "having to undertake an individualized inquiry into the state of mind of even one-quarter of them simply to establish Ford's liability will overwhelm any trial in this matter." (*Id.* at 11). Thus, we denied Corder's second motion to certify.

Corder's third motion for class certification attempts to address the concerns posed in the court's prior order by altering the class definition to specifically exclude "individuals whose 2004 model year Ford F–Series Super Duty Truck or Excursion vehicles were registered as commercial vehicles pursuant to KRS 186.050 (2004)." (DN 242, p. 1). KRS § 186.050 lists the registration fees for certain classes of vehicles in Kentucky. Subsection (1) of the registration statute outlines the registration fee "for motor vehicles, including taxicabs, airport limousines, and U-Drive-Its, primarily designed for carrying passengers and having provisions for not more than nine (9) passengers, including the operator, and pickup trucks and passenger vans which are not being used on a for-hire basis," while subsection (2) provides for the registration fee for motorcycles. KRS § 186.050(1), (2). Subsection (3) declares that "[a]ll motor vehicles except those mentioned in subsections (1) and (2) of this section, and those engaged in hauling passengers for hire, operating under certificates of convenience and necessity, are classified as commercial vehicles[.]" KRS § 186.050(3)(b).

The types of vehicles at issue in this action are F–Series Super Duty Trucks, which would be considered "pickup trucks" under the registration statute, and F–Series Super Duty Excursions, which would be classified as motor vehicles primarily designed for carrying passengers and having provisions for not more than nine passengers. Thus, the vehicles at issue

in this action cannot be considered "commercial vehicles" under the statute because they fall within the definition provided in Subsection (1).³

According to Corder, the revised class definition creates a class in which all "proposed [members] are, by definition, non-commercial purchasers." (DN 242, p. 4). Thus, Corder claims, the court need only engage in a ministerial review of registration records to determine which of the trucks were purchased for non-commercial purposes. However, the fact that a vehicle was or was not registered as a commercial vehicle under the provisions of KRS § 186.050 does not answer the inquiry required by the KCPA. To bring an action under the KCPA, a consumer must show that he or she purchased or leased goods "primarily for personal, family or household purposes . . . ." KRS § 367.220. The KCPA thus addresses the consumer's reason, or primary purpose, for acquiring the good. The registration statute, however, does not consider the reason, or primary purpose, for the consumer's acquisition of the vehicle. Rather, it addresses the physical attributes of the vehicle and, in one instance, the actual use of the vehicle as a for-hire vehicle.

Corder's proposed class definition would rely on the registration statute to distinguish between commercial and non-commercial vehicles on the basis of their physical characteristics or their use as a for-hire vehicle. This class definition fails to satisfy the requirements of the KCPA because it does not address the consumer's primary purpose for purchasing or leasing the vehicle. As such, the court would still need to undertake an individualized inquiry into the customers' primary initial intended use for the vehicle at the time acquisition. Therefore, Corder's proposed class definition does not resolve the court's concerns that many of these

---

³ The court notes that some of the F–Series Super Duty Trucks may fall under Subsection (3), and therefore be classified as commercial vehicles, if they are registered as pickup trucks used on a for-hire basis.

individualized inquiries would require jurors to resolve competing arguments based on detailed facts, thereby overwhelming the trial of the common issues.

Corder argues that "[o]ther courts have found that a determination for each class member as to whether their transaction was made for personal, family or household purposes does not predominate over common issues regarding whether a defendant's conduct violates the law." (DN 242, p. 23–24). Corder cites to two cases in which putative classes brought claims against commercial entities under the Fair Debt Collection Practices Act ("FDCPA"), which applies to the obligation of a consumer to pay money arising from a transaction for personal, family, or household purposes. *See Butto v. Collecto Inc.*, 290 F.R.D. 372 (E.D.N.Y. 2013); *Gradisher v. Check Enforcement Unit, Inc.*, 203 F.R.D. 271 (W.D. Mich. 2001). In *Gradisher*, a Michigan district court concluded that it could determine whether each proposed class member wrote a check for personal or business purposes, and thus satisfy the prerequisites for a claim under the FDCPA, by looking at the check itself (*i.e.*, whether it was a personal check), examining the defendant's computer system, or asking "one simple question to each class member." *Gradisher*, 203 F.R.D. at 279. Corder contends that, as in *Gradisher*, this court can similarly discern a potential class member's primary purpose by engaging in a ministerial review of registration records and insurance policy declarations, or by asking the potential class member "one simple question."[4] (DN 242, p. 24).

The individualized inquiry involved in the FDCPA cases cited above is distinguishable from the inquiry required for claims brought under the KCPA. Notably, the KCPA restricts claims to those purchasers whose *primary* purpose was for a personal, family, or household use,

---

[4] Ford argues that Corder is proposing that the court engage in a "truncated evidentiary hearing [which] would violate both the Rules Enabling Act and the Due Process Clause of the United States Constitution because Ford would be deprived of its right to put on evidence negating an element of a claim." (DN 246, p. 7). Because the court declines to adopt Corder's proposed method of ministerial review, we need not address these concerns raised by Ford.

but it does not require that the customer's *sole* purpose was for a personal, family, or household use. (DN 238, p. 10). Accordingly, distinguishing between the customers who registered their trucks as commercial vehicles under KRS § 186.050 and those customers who did not register their trucks as commercial vehicles would not, as Corder claims, resolve the preliminary inquiry required by the KCPA. The court would still need to determine whether the customers who did not register their trucks as commercial vehicles under KRS § 186.050 had the primary purpose, at the time of purchase, to use their trucks for personal, family, or household purposes. And because the KCPA explicitly requires that a person have purchased a product primarily for personal, family, or household use prior to a finding of liability, Ford is entitled to demand a full litigation of that element for each potential class member. *See Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2561 (2011). Further, other courts have declined to certify class actions in situations similar to the one before the court, in which there was a concern regarding proof of a certain element of the action. *See In re OnStar Contract Litig.*, 278 F.R.D. 352, 379–381 (E.D. Mich. 2011); *Arabian v. Sony Elecs., Inc.*, 2007 WL 627977, *14 (S.D. Cal. Feb. 22, 2007); *Rockey v. Courtesy Motors, Inc.*, 199 F.R.D. 578, 593 (W.D. Mich. 2001); *Carpenter v. BMW of N. Am., Inc.*, 1999 WL 415390, *3 n. 6 (E.D. Pa. June 21, 1999).

Therefore, Corder's third proposed class definition does not rectify the problems this court identified in our prior order denying class certification. Accordingly, we find that Corder has not met his burden of showing that class certification is appropriate under Federal Rule of Civil Procedure 23(b)(3).

**IV.**

For the reasons set forth herein this date and the court being otherwise sufficiently advised, **IT IS HEREBY ORDERED** that Corder's third motion for class certification (DN

242) is **DENIED**. A separate order will be entered this date in accordance with this memorandum opinion.

**IT IS SO ORDERED.**

January 16, 2014

**Charles R. Simpson III, Senior Judge
United States District Court**